UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LARRY WEAVER and ) | |
| JANE WEAVER, ) | |
|     Plaintiffs, ) | |
| ) | |
| vs. ) | 1:08-cv-0265-TAB-SEB |
| ) | |
| UNITED PARCEL SERVICE CO., ) | |
|     Defendant. ) | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.     Introduction**

Defendant United Parcel Service Co. moved for summary judgment in this slip-and-fall case, arguing that Plaintiffs Larry and Jane Weaver cannot establish causation. Plaintiffs responded with Larry Weaver's affidavit attempting to establish causation. Because Weaver's affidavit contradicts his prior deposition testimony, the Court grants UPS's motion to strike it. Because the plaintiffs cannot establish causation with the remaining evidence, the Court grants summary judgment in favor of UPS.

**II.    Background**

On February 21, 2006, Larry Weaver fell in UPS's parking lot. [Docket No. 44 (Ex. 1 at 1).] UPS's parking lot contains two sets of parking blocks—one light-colored block and a second block that blends in with the pavement. [Docket No. 44 (Ex. 2).] While walking across the parking lot, Weaver cleared the first block, and "the next thing [he] knew [he] was picking [himself] up off the fence." [Docket No. 43 (Ex. 1 at 27–28).] No one saw Weaver fall.

On January 17, 2008, Larry and Jane Weaver sued UPS for damages. Larry alleged that he suffered injuries as a result of UPS's failure to maintain a safe parking lot, specifically that he

"slipped and fell on a hidden curb in the parking lot." [Docket No. 1 (Ex. 3 at 1).] Jane alleged that Larry's injuries caused a loss of consortium and services. [*Id.*]

UPS moved for summary judgment, arguing that the Weavers cannot succeed because they cannot establish what caused Weaver's fall. [Docket No. 42 at 1.] UPS points to Weaver's deposition testimony regarding the fall:

> Q: Okay. And the second parking block, are you sure that's what you tripped over, or could it have been something else in the parking lot? Do you know for sure that it was this second parking block?
>
> A: I don't think anything else was there.
>
> Q: I understand that, that you think this thing was there.
>
> A: It's the only thing that was there.
>
> Q: Okay. But do you know that that's what you tripped over? Do you recall hitting that and tripping over it?
>
> A: No. Just put it that way.
>
> Q: So it's possible there could have been something else there after that first block that you might have tripped over?
>
> A: You mean maybe somebody threw a beer can out there or something?
>
> Q: I'm just saying, do you know?
>
> A: I don't know.
>
> Q: Okay. You don't know?
>
> A: No.
>
> Q: But you don't know that it was that second block either; correct? I apologize. I'm not trying to confuse you here.
>
> A: No. I'm just trying to figure out—if I knew, I would be able to say yes, I absolutely tripped over that. But all I know is I cleared that

2

> one, and the next thing I knew I was picking myself up off the fence.
>
> Q: So you walked over the white parking block there?
>
> A: Yes.
>
> Q: And then the next thing you know you fell; correct?
>
> A: Yes.
>
> Q: And we know that we have this second parking object there or the second raised asphalt object.
>
> A: Right.
>
> Q: But we're not sure that that's what you tripped over; correct?
>
> A: As far as I am, that's what I tripped over.
>
> Q: Okay.
>
> A: There's nothing else there that I could have tripped over.
>
> Q: Right. But do you distinctly remember hitting that object and then falling?
>
> A: No.
>
> Q: You just remember stepping over the white object and then falling?
>
> A: Yes.

[Docket No. 43 (Ex. 1 at 26–28).]

Plaintiffs respond that summary judgment is inappropriate, citing Weaver's later affidavit. [Docket No. 44.] In paragraph 12 of his affidavit, Weaver stated that:

> after the accident I went back and reviewed the scene where I fell. That I now know that after I stepped over the parking curb I tripped/slipped over the second parking curb that was hidden from my view because of the way it was constructed and maintained, that is, blending into the parking lot pavement.

3

[Docket No. 44 (Ex. 1 at 2).] Weaver also stated that he did not trip over his own feet and did not suffer from a medical condition when he fell. [*Id.*] Additionally, Weaver designated the affidavit of Gil Cooke, who was walking in front of Weaver at the time of the fall but did not see the fall. [Docket No. 44 (Ex. 4 at 1).] Cooke stated that "after Larry Weaver slipped and fell I did not see any obstruction nor impediment which would indicate a reason why he slipped and fell. In addition, I did not see any garbage nor a beer can which would indicate a reason for Larry Weaver's slip and fall." [*Id.*]

UPS moved to strike paragraph twelve of Larry Weaver's affidavit, arguing that it contradicts his prior deposition testimony. [Docket No. 46.] Weaver responded that the deposition questions asked only for his knowledge at the time of the accident, not his knowledge after. [Docket No. 47 at 2.] Weaver designated additional deposition testimony that the "little black rise there is the second curb that got me." [Docket No. 48 (Ex. 1 at 24).] Weaver also submitted a second affidavit stating:

> 4. That when answering the questions [defense counsel] asked me about the accident and whether I knew what it was I slipped/tripped on, I assumed he wanted to know about my thoughts on the actual date of my accident.
>
> 5. That [defense counsel] never asked me whether or not I knew, after the accident, what it was that I slipped/tripped on.
>
> 6. That during my deposition I gave only truthful answers. At the time I fell I did not know what I fell on.
>
> \* \* \*
>
> 9. Had [defense counsel] asked me if I knew, today (today being the day of the deposition), what I had slipped/tripped on, I would have told him unequivocally that I slipped/tripped over the hidden curb.

[Docket No. 48 (Ex. 2).]

**III.     Discussion**

     **A.     UPS's motion to strike**

A plaintiff cannot defeat a defendant's motion for summary judgment "merely by manufacturing a conflict in his own testimony by submitting an affidavit that contradicts an earlier deposition." *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 532 (7th Cir. 1999) (citing *Darnell v. Target Stores*, 16 F.3d 174, 176 (7th Cir. 1994)). When an affidavit conflicts with prior deposition testimony, "the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy." *Id.* (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67–68 (7th Cir. 1995)) (quotation omitted). Self-serving affidavits without support in the record will not defeat a motion for summary judgment. *Id.* (citing *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993)).

Weaver's affidavit markedly contradicts his previous deposition testimony. To explain this inconsistency, Weaver states that he "assumed" counsel wanted to know about his thoughts on the actual date of the accident. [Docket No. 48 (Ex. 2 at ¶ 4).] Any such assumption is inherently flawed. First, there is nothing about this case that makes Weaver's state of mind at the time of the incident—as opposed to after the fact—particularly important.[1] Moreover, nothing in counsel's deposition questions

---

[1] Compare, for instance, a Fourth Amendment false arrest case, in which the police officer's knowledge at the time of the arrest—rather than sometime later after additional facts are discovered—controls the reasonableness of the officer's action and thus could impact that officer's liability. *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008) ("A police officer has probable cause to arrest if, *at the time of the arrest*, the facts and circumstances within the

suggests that this was an appropriate or reasonable assumption.

On the contrary, at Weaver's deposition—which occurred more than three years after the accident—counsel's questions were plainly directed to Weaver's recollection after the accident, not his state of mind at the time of the fall. [Docket No. 43 (Ex. 1 at 26–28) ("Are you sure it was that second block?", "Do you recall hitting [the second block] and tripping over it?", "Do you distinctly remember hitting the object and then falling?").] In response to this questioning, Weaver testified that he did not remember hitting the second parking block and then falling. Thus, Weaver's assumption that counsel's deposition questions targeted his state of mind at the time of the accident provides no basis to permit such a glaring evidentiary inconsistency.

Weaver also attempts to explain away his change in testimony by noting in his recent affidavit testimony that "after the accident" he went back and reviewed the scene where he fell. [Docket No. 44 (Ex. 1 at ¶ 12).] Presumably Weaver is suggesting that his post-accident inspection of the scene caused him to remember something differently than he had previously thought. The Court accepts the proposition that a post-accident inspection of the scene could prompt deponents to change their prior testimony on a crucial fact. But in this case there is nothing to suggest that Weaver's modified affidavit testimony was the result of an on-site inspection. This is because at the time Weaver gave his deposition he already had returned to inspect the scene. Thus, Weaver's on-site

---

officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.") (citing *Wagner v. Wash. County*, 493 F.3d 833, 836 (7th Cir. 2007)) (quotation omitted) (emphasis added).

6

inspection cannot provide a legitimate basis for his changed testimony.

Weaver offers no other explanation for his dramatic change in testimony. He does not claim to have suffered a memory lapse. Nor does he contend that he was unexpectedly ambushed by causation-based questions. Any such argument would be unavailing in a slip-and-fall case such as this, in which causation questions should be expected. So Weaver was not caught off guard. Nor does Weaver claim to have been confused by defense counsel's line of questioning. Had there been any confusion, Weaver could have simply requested clarification, as defense counsel directed him to do. [Docket No. 48 (Ex. 1 at 3) ("If at any time you don't understand one of my questions, just let me know. I'll try to rephrase it or restate it.").] Weaver did not do so.

Nor did Weaver correct his testimony by way of an errata sheet during the 30-day period permitted by Federal Rule of Civil Procedure 30(e)(1). Instead, Weaver changed his testimony only after UPS filed its motion for summary judgment, which pounced upon the causation deficiency in Weaver's testimony. Because Weaver's affidavit contradicts his prior deposition testimony and Weaver offers no satisfactory explanation for the contradiction, the Court grants UPS's motion to strike paragraph twelve of Weaver's affidavit.

### B.      UPS's motion for summary judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

Negligence consists of three elements: "(1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship, and (3) an injury to the plaintiff proximately caused by the breach." *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991) (citing *Miller v. Griesel*, 308 N.E.2d 701, 706 (Ind. 1974)). "[C]ausation may not be inferred merely from the existence of an allegedly negligent condition." *Hayden v. Paragon Steakhouse*, 731 N.E.2d 456, 458 (Ind. Ct. App. 2000) (citing *Midwest Commerce Banking Co. v. Livings*, 608 N.E.2d 1010, 1013 (Ind. Ct. App. 1993)).

A slip-and-fall plaintiff cannot establish causation without evidence of what caused the fall. *Hayden*, 731 N.E.2d at 458–59; *Midwest Commerce*, 608 N.E.2d at 1013. For example, in *Hayden*, the plaintiff sued for injuries sustained when he fell outside a restaurant on a snowy day. *Hayden*, 731 N.E.2d at 457. The plaintiff alleged that he slipped and fell on snow and ice, but "he testified in his deposition that he did not see any snow on the pavement where he fell and that he did not know whether there was

any ice in the area." *Id.* at 458. No one witnessed the plaintiff's fall. *Id.* When asked what facts supported his belief that he slipped on black ice, the plaintiff responded, "None other than the fact that my feet went out from underneath me and I went up in the air and fell down." *Id.* When asked what he slipped on that caused the fall, plaintiff responded, "I don't know for sure." *Id.* The Indiana Court of Appeals held that the plaintiff failed to demonstrate the existence of a negligent condition that caused the plaintiff's fall, and summary judgment for the restaurant was appropriate. *Id.* at 459.

   Similarly, in *Midwest Commerce*, the plaintiff sued for injuries sustained when she fell while in line at the bank. 608 N.E.2d at 1011–12. The evidence designated to the trial court showed that the plaintiff "did not know what caused her fall." *Id.* at 1013. The plaintiff testified, "I was standing by the rope at the end of the line, and the next thing I knew I was into the counter. . . . I probably had started forward and I don't know, hit the carpet, hit the rug, maybe pushed." *Id.* The Indiana Court of Appeals held that the plaintiff failed to meet her burden to present specific facts of what caused her injury, and summary judgment for the bank was appropriate. *Id.*

   Conversely, a plaintiff with evidence of what caused the fall can establish causation. In *St. Mary's Medical Center v. Loomis*, 783 N.E.2d 274, 277 (Ind. Ct. App. 2002), a doctor slipped and fell in a hospital break room. The doctor argued that water on the break room floor caused his fall. He presented evidence that the incident report noted there had been water on the floor and that the back of his scrubs were wet after the fall. *Id.* at 281. He also testified, "The water on my back was where I slipped. I fell on the water that I slipped on." *Id.* The Indiana Court of Appeals held that the doctor

9

presented sufficient evidence of causation to overcome the defendant's motion for judgment on the evidence. Likewise, in *State Street Duffy's, Inc. v. Loyd*, 623 N.E.2d 1099, 1102 (Ind. Ct. App. 1993), a woman who fell on a step presented evidence of causation by her son's testimony that "she pointed and said that she had tripped over the step . . . ." The Indiana Court of Appeals held that the woman presented sufficient evidence of causation to defeat the defendant's motion for summary judgment.

UPS relies on *Iwaniuk v. Bethlehem Steel Corp.*, 402 F.2d 309 (7th Cir. 1968), and *Foster v. New York Central System*, 402 F.2d 312 (7th Cir. 1968), cases that closely resemble *Hayden* and *Midwest Commerce*.[2] Weaver attempts to distinguish these cases by pointing to the affidavit of Gil Cooke, who he argues was "a witness who observed the approximate location of Larry's fall immediately after the accident occurred." [Docket No. 44 at 4–5.] Weaver's argument fails because Cooke did not witness the actual fall or testify as to what Weaver fell on.

---

[2] In *Iwaniuk*, the plaintiff's decedent was injured when he fell from a catwalk at a construction site. The only witness to the accident saw the plaintiff on the catwalk, looked away, looked back, and saw the plaintiff lying on the ground. *Id.* at 310. The Seventh Circuit held that "[t]he total absence of evidence as to the cause of plaintiff's decedent's fall compels the conclusion, under Indiana law, that plaintiff failed to sustain the burden of proof on the issues of negligence and proximate cause." *Id.* at 311.

In *Foster*, the plaintiff was injured when he was thrown from a motorcycle. He argued that his injury was caused by a faulty railroad grade, but there were no eyewitnesses to the accident, which he could not remember. Judgment for the railroad was proper even though the track protruded above the grade contrary to Indiana law, the plaintiff was found sixty feet from the track, the motorcycle had no defects, the weather was clear, and there were no skidmarks. *Id.* at 313. The Seventh Circuit, applying Indiana law, noted that "[t]he only facts which plaintiff could have proven were capable of more than one interpretation, but no interpretation could have been based on anything other than unsupported inferences. Without the possibility of witnesses or testimony from plaintiff, no jury would have been justified in inferring that the accident happened in a particular manner."

Weaver presented no evidence that he fell on the second parking block. Instead, he testified that "I don't think anything else was there," and "all I know is I cleared that one, and the next thing I knew I was picking myself up off the fence." He did not remember hitting the second parking block and then falling. Weaver has therefore failed to meet his burden on the element of causation, and summary judgment for UPS is appropriate.

**IV.     Conclusion**

The Court grants UPS's motion to strike [Docket No. 46] and UPS's motion for summary judgment. [Docket No. 41.]

Dated:   09/29/2009

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

James L. Culp
WHITTEN LAW OFFICE
jculp@indycounsel.com

Kristen N. Halliden
SWEETIN & BLEEKE, P.C.
kristen@sweetinbleeke.com

Jennifer Marie Herrmann
KIGHTLINGER & GRAY
jherrmann@k-glaw.com

D. Bryce Zoeller
KIGHTLINGER & GRAY
bzoeller@k-glaw.com